IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BEVERLY ROBINSON )
)
        Plaintiff, )
) Wayne R. Andersen
v. ) District Judge
)
MORGAN STANLEY DEAN WITTER, and )
DISCOVER FINANCIAL SERVICES ) Case No. 05 C 04258
)
        Defendant. )

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on defendants Morgan Stanley Dean Witter ("Morgan Stanley") and DFS Services LLC's (formerly known as "Discover Financial Services LLC") motion for summary judgment filed pursuant to Federal Rule of Procedure 56. This motion for summary judgment encompasses plaintiff's claims under the Americans with Disabilities Act of 1990. For the reasons set forth below, defendants' motion is granted.

## BACKGROUND

Plaintiff Beverly Robinson was employed by Morgan Stanley from October 2, 2000 through August 24, 2004, as a Senior Associate Auditor in the Internal Audit Department ("IAD") of its wholly-owned subsidiary, DFS Services LLC ("DFS"), in Riverwoods, Illinois. In October or November of 2000, the plaintiff notified her manager of her allergy to perfumes and other fragrances and asked for accommodation. According to Robinson, her manager refused her request on the grounds that asking people not to wear perfume would interfere with

1

their right to personal hygiene. At various points during her employment, Robinson informed several employees of defendants, including members of the IAD, Human Resources, and management personnel, of her allergy to perfumes and other fragrances.

When exposed to fragrances or perfumes, Robinson may experience cold-like symptoms such as headache, stuffiness, shortness of breath, fatigue, sore throat, and other symptoms that may persist for as little as a few minutes or up to a week. She describes her most severe reactions as like being "in a mental fog" or "in a comatose state." To alleviate her allergy symptoms at the workplace and in her general life, Robinson occasionally wears a mask, uses nasal inhalers, fragrance-free products, Benadryl, and latex gloves. She also provided members of the IAD with fragrance-free hand lotion during her employment at Morgan Stanley.

In 2002, the IAD was refurbished and seating assignments were changed. Her supervisor placed her in a seating area that she believed would minimize Robinson's exposure to perfumes and other fragrances. No person was officially seated on either side of Robinson, however one work station was temporarily occupied by Bernie Czerwinski during 2003 or 2004 and the other held a shared network computer. For some time after this relocation, Robinson's condition improved or did not worsen. In August 2002, Robinson asked for and was granted permission to use an alternative rental car service due to her sensitivity to air fresheners used by the company's usual rental car service

In August 2003, Robinson met with Human Resources to discuss her sensitivity to perfumes and fragrances. She informed them that she needed to avoid being exposed to fragrances. Employee Relations Specialist Tony Cavalliero provided Robinson with a Medical Certification Form, which she completed with her doctor and submitted by the end of the month.

2

On this form, her doctor, Dr. Lisa Abrams states that Robinson has "extremely high sensitivity to perfume and other fragrances," but indicates that she does not have a "serious health condition" as defined by the Family and Medical Leave Act of 1999 ("FMLA"). Dr. Abrams further certifies on this form that Robinson is able to perform "work of any kind." Defendants' doctor subsequently spoke with Dr. Abrams seeking clarification of her diagnosis and was told that Robinson should avoid perfumes and fragrances.

Robinson reported to Cavalliero in September 2003, that the cologne of Jason Emery was "causing a major problem" for her. In December 2003, Robinson had another meeting with Human Resources members and reported that the situation with Emery had been resolved. Robinson was then asked to provide an updated Medical Certification Form, although there is no indication that she was provided with a blank form until March 29, 2004. Robinson did not submit an updated Medical Certification Form until August 24, 2004, the day she was discharged.

On August 11, 2004, Robinson complained via email to Human Resources that she was again experiencing health concerns related to the perfume in her work area. Subsequent inter-office memoranda were exchanged and a meeting occurred to discuss the situation. Human Resources personnel again requested an updated Medical Certification Form. On August 18, 2004, the DFS Vice President of Human Relations sent Robinson an inter-office memorandum that proscribed steps that she could take until she submitted a new Medical Certification Form These steps included informing her immediate coworkers and those with whom she had meetings of her sensitivities to perfumes and fragrances, and wearing a mask. On August 19, 2004, the Vice President and Director of Audit for Morgan Stanley's Credit Services Division, David Sutter, sent an email to all IAD employees asking that they be considerate of employees

who may have a high sensitivity to perfumes and other fragrances. Robinson considered this memorandum to be "good news."

On August 24, 2004, Robinson submitted a second Medical Certification Form at her termination meeting. The August 2004 Medical Certification Form, unlike the August 2003 form, states that Robinson did have a "serious health condition" as defined by the FMLA and describes as "severe allergic reaction to fragrance and perfume." The regime of continuing treatment is "avoidance of fragrances and perfumes" and "no work if allergic reaction occurs." No reduced work schedule is indicated on this form. Upon receiving a "Job-in-Jeopardy" memorandum on August 6, 2006, which listed numerous issues of concern relating to her behavior and performance and the previous actions plans to address these, Robinson was notified that she would receive a performance review in 15 days at which point immediate termination might result. Robinson was discharged on August 24, 2004 at this performance review conference. She filed a discrimination charge with the Equal Employment Opportunity Commission on January 19, 2005. She received her Right to Sue Letter on April 26, 2005, and subsequently brought this discrimination suit against the defendants under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. ("ADA").

## **STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56©. A genuine dispute about a material fact exists only if the evidence is such that a reasonable jury could find in favor of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The judge's role is not to weigh the

evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Doe v. R.R. Donnelley & Sons Co*., 42 F.3d 439, 443 (7th Cir. 1994). In ruling on a motion for summary judgment, the Court must draw every reasonable inference from the record in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to defeat a defendant's motion for summary judgment. *Anderson,* 477 U.S. at 252. The nonmoving party may not rest upon conclusory allegations in the pleadings, but must set forth a genuine issue for trial. FED.R.CIV.P. 56(e); *Thomas v. Christ Hosp. and Medical Center,* 328 F.3d 890, 892- 893 (7th Cir. 2003).

## DISCUSSION

Ms. Robinson claims that defendant Morgan Stanley discriminated against her under the ADA by failing to provide reasonable accommodations in the workplace. The ADA states that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to … terms, conditions, or privileges of employment." 42 U.S.C. § 12112(a). A "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The ADA requires that employers provide "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an

5

undue hardship." 42 U.S.C. § 12112(b)(5)(A).  Robinson must establish three elements to her claim: (1) that she had a disability protected by the ADA, (2) the employer knew of her qualifying disability, and (3) that employer failed to accommodate her.  *Hoffman v. Caterpillar*, 256 F.3d 568, 572 (7th Cir. 2001).  Ms. Robinson fails to demonstrate a genuine issue of material fact as to any of these elements.

Morgan Stanley seeks summary judgment on the ground that Robinson is not "disabled" under the ADA.  For purposes of the ADA "merely having an impairment does not make one disabled …" *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 195, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002).  The ADA defines "disability" with respect to an individual in three ways: (1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such impairment; or (3) being regarded as having such an impairment.  42 U.S.C.A. § 12102(2).  The Court must interpret these terms "strictly to create a demanding standard for qualifying as disabled." *Toyota Motor Mfg.,* 534 U.S. at 197.

Turning to the first method of establishing a disability, an impairment is "substantially limiting" if it significantly restricts "the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(ii); see also *Dvorak v. Mostardi Platt Assocs.,* 289 F.3d 479, 483 (7th Cir. 2002).  According to the Code of Federal Regulations, major life activities include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(I).

Robinson claims that she is substantially limited in several major life activities, including caring for oneself, walking, seeing, speaking, breathing, and learning. However, her alleged limitations are not substantial as a matter of law. The Court must consider the following factors in determining whether a person is substantially limited in a major life activity: (1) the nature and severity of the impairment, (2) the duration or expected duration of the impairment, and (3) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment. 29 C.F.R. § 1630.2(j)(2). When exposed to fragrances or perfumes, Robinson may experience cold-like symptoms such as headache, stuffiness, shortness of breath, fatigue, sore throat, and other symptoms that may persist for as little as a few minutes or up to a week. Though Robinson may be temporarily restricted in her ability to perform activities such as breathing and seeing when exposed to perfumes or fragrances because her throat may become constricted and eyes water, the Seventh Circuit has held that "intermittent flare-ups" do not establish that an impairment is a disability. *Moore v. J.B. Hunt Transport, Inc.*, 221 F.3d 944, 952 (7th Cir. 2000); see also *Ammons-Lewis v. Metropolitan Water Reclamation Dist.*, Case No. 03 C 0885, 2004 U.S. Dist. LEXIS 21917 (N.D. Ill. Nov. 1, 2004) (finding no substantial limitation where a plaintiff suffered from difficulty breathing during an allergic reaction to a chemical in the workplace and had to breathe through her mouth).

It is notable that Robinson considers herself disabled only when exposed to perfume or fragrances, and has never been hospitalized for this condition. Additionally, assuming that working is a major life activity, "a claimant would be required to show an inability to work in a broad range of jobs, rather than a specific job." *Toyota Motor Mfg.,* 534 U.S. at 199, quoting *Sutton v. United Airlines, Inc.,* 527 U.S. 471, 492, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). Robinson has sought employment as an auditor following her termination from Morgan Stanley.

7

Further, her doctor, Dr. Abrams did not consider Robinson disabled when she completed the August 2003 Medical Certification Form. Instead, she stated that Robinson has "extremely high sensitivity to perfume and other fragrances," and certified that Robinson is able to perform "work of any kind." Because Robinson's limitations cannot be said to "substantially limit" her major life activities, we turn to the remaining ways of showing a disability under the ADA.

The plaintiff could also surmount defendants' motion for summary judgment for failure to establish a disability protected by the ADA by showing a "record of such impairment" or "being regarded as having such an impairment." 42 U.S.C.A. § 12102(2). A record of a disability means that an individual "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k). There is no evidence that Robinson's doctor during the time of her employment at Morgan Stanley, or any other person, classified her as having a disability that "substantially limits" a major life activity. As discussed above, Robinson's doctor certified on the 2003 Medical Certification Form that Robinson could perform "work of any kind." Thus, Robinson cannot demonstrate that she had a record of such an impairment.

To establish that she was "regarded as having such an impairment," Robinson must either show that "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton v. United Airlines, Inc.,* 527 U.S. 471, 489-90, 119 S. Ct. 2139, 144 L. Ed. 2d 450 (1999); see also 29 C.F.R. § 1630.2(l). In order to establish a "regarded as" claim, a plaintiff must do

more than simply show the employer knew of the impairment, but also show that the employer believed the impairment was "substantially limiting." *Davidson v. Midelfort Clinic, Ltd.,* 133 F.3d 499, 510 (7th Cir. 1998). The record indicates that Morgan Stanley likely had doubts as to whether Robinson's allergy rose to the level of a disability requiring accommodations under the ADA. Between August 2003, when Robinson submitted her first Medical Certification Form (which stated that she did not have a disability covered by the FMLA) and August 2004, it is undisputed that Morgan Stanley asked for an updated form on at least four separate occasions which Robinson did not provide until the day of her discharge. Robinson cannot show that she was "regarded as having such an impairment" that substantially limits a major life activity by her employer. For these reasons, Robinson fails to demonstrate the existence of a disability as defined by the ADA in any of its three ways.

Because Robinson cannot establish a disability as defined by the ADA, her accommodation claim fails as a matter of law. There is no need to discuss the further remaining elements of her ADA accommodation claim. However, even if the Court found that Robinson had established a genuine issue of material fact as to the existence of a disability protected by the ADA, the plaintiff fails to show that her employer was aware of that disability. As discussed above, in the August 2003 Medical Certification Form, Robinson's doctor certifies that she does not have a disability and is able to perform "work of any kind." When Robinson's doctor was asked by defendants to provide clarification on the August 2003 form, Dr. Abrams's only recommendation was that Robinson should avoid fragrances. See *Hunt-Golliday v. Metropolitan Water Reclamation Dist*., 104 F.3d 1004 , 1013 (7th Cir. 1997) (summary judgment was affirmed where letters from plaintiff's doctor stated that plaintiff was "capable of working" and "mentions nothing about her needing any special accommodations…"). Further, Morgan

Stanley asked for an updated Medical Certification Form several times between August 2003 and August 2004. Robinson failed to produce an updated form until the day she was discharged on August 24, 2004. This occurred mere weeks after receiving the final "Job in Jeopardy" memorandum on August 6, 2004. The ADA requires that the employer and employee engage in an interactive process to determine the appropriate accommodations. *Beck v. University of Wisconsin Bd. of Regents,* 75 F.3d 1130, 1135 (7th Cir. 1996). Thus, Robinson is unable to demonstrate that her employer was aware of a disability covered by the ADA, failing to meet the second component of an ADA claim, as well as the first.

Robinson has failed to both establish an ADA-protected disability and that her employer was aware of its existence. She also is unable to show that her employer failed to reasonably accommodate her, failing to establish the third element of an ADA claim. Despite any doubts Morgan Stanley may have had as Robinson's alleged disability, it is undisputed that Robinson was provided with several accommodations such as special seating arrangements, the use of a fragrance-free rental car, intervention with specific employees that wore fragrances, and a department-wide memorandum from management encouraging employees to be considerate of individuals with sensitivity to fragrances and perfumes. Shortly after receiving the "Job-in-Jeopardy" memorandum on August 6, 2004, Robinson emailed Human Resources to complain about perfume and fragrances in the area. Within a week, the matter was addressed by management via a department-wide email. Plaintiff has admitted that these accommodations were helpful, though she desired more. Further, it is undisputed that Human Resources personnel engaged Robinson in several meetings over the course of her employment to address her concerns, and repeatedly requested an updated Medical Certification Form during this

process. Defendant's doctor also contacted Dr. Abrams following the 2003 Medical Certification Form, seeking clarification on the condition and what accommodations, if any, were needed. Clearly, the defendant took reasonable steps to accommodate the plaintiff's alleged disability.

## **CONCLUSION**

Failure to demonstrate a genuine issue of material fact as to any element of an ADA claim requires that summary judgment be granted. Since the plaintiff has failed to show all three necessary elements, defendants' motion for summary judgment [42] is granted.

_____
Wayne R. Andersen
United States District Judge

Dated: August 31, 2007